UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LIONEL FLEMING,**<br><br>**Plaintiff,**<br><br>v.<br><br>**HOME DEPOT U.S.A., INC.,**<br><br>**Defendant.** | Civil Action No.  04-30213 MAP |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") has moved for Summary Judgment pursuant to Rule 56.1 of the Local Rules of Civil Procedure and Rule 56 of the Federal Rules of Civil Procedure on each count of Plaintiff's Complaint, and Defendant submits this Memorandum in support of its Motion.  Because Plaintiff's claims are insupportable from the record developed in this matter, the Court should grant Defendant's Motion.

**I.   INTRODUCTION**

Plaintiff started his career with Home Depot in Florida and, pursuant to his request, Home Depot transferred him to the West Springfield, Massachusetts store in the summer of 1999, where he remains employed currently.  The centerpiece of Plaintiff's claim is that Home Depot discriminated against him based on his race (African American) when he was not promoted in October 2001 from Associate to Department Supervisor.  Plaintiff also claims this lack of promotion constituted retaliation for a previous lawsuit Plaintiff brought against Home Depot in Florida several years ago.

Plaintiff's claims are insupportable and the Court should grant Home Depot's Motion for Summary Judgment.

Plaintiff's Complaint alleges that Defendant (1) discriminated against him in violation of M.G.L. c. 151B, § 4 on the basis of his race when it did not promote him in October 2001; and (2) violated M.G.L. c. 151B, § 4 when it retaliated against him in October 2001 for having brought a previous lawsuit against Defendant in Florida (which was filed in 1996 and settled in 1998).[1]  As set forth more fully below, neither count is legally or factually sufficient to survive Defendant's current motion.

With regard to the October 2001 promotion opportunity, which Plaintiff admits is the gravamen of this case, Plaintiff's claim of race discrimination fails for several reasons.  First, Plaintiff cannot demonstrate, as he must, that other employees not of his protected class, with the same qualifications, were promoted in his place.  In fact, four employees were promoted to Department Supervisor in October 2001.  Each of these four employees exhibited superior performance qualifications than Plaintiff.  Moreover, one of the four employees was non-Caucasian.

Even assuming Plaintiff could satisfy the *prima facie* case of race discrimination, there is no evidence in this record that Defendant's reason for not promoting Plaintiff in October 2001 was a pretext for discrimination.  Rather, it is undisputed that, shortly after the October 2001 promotion process, Plaintiff rejected an offer for a different Department Supervisor position, as well as numerous offers to interview for Department Supervisor positions that became available in subsequent years.

---

[1]  Plaintiff's Complaint simply defines his counts as "Racial Discrimination" and "Retaliation."  As Plaintiff filed his Complaint in state court (which Defendant removed to federal court on the basis of diversity of the parties), Defendant is treating Plaintiff's claims as brought pursuant to M.G.L. c. 151B. (Complaint, Ex. 5).  If Plaintiff intended to assert a violation of any other law, Defendant reserves the right to respond thereto at a later date with the Court's permission.

2

Moreover, quite to the contrary of the alleged racial bias, the same individual who interviewed Plaintiff in October 2001 promoted several African-American employees to Department Supervisor and Assistant Store Manager both before and after October 2001.

There is similarly no evidence to support Plaintiff's claim that he was retaliated against in October 2001 for having brought a previous lawsuit against Home Depot in Florida in 1996. First, Plaintiff has failed to produce any evidence that anyone at Home Depot in the West Springfield store knew about his former lawsuit in Florida during the October 2001 promotion process. Plaintiff testified he could not recall ever informing a manager at the West Springfield Home Depot of his previous case. Because Plaintiff cannot meet his burden to, at a minimum, show knowledge of his protected activity, his retaliation claim must fail. Notwithstanding this fundamental infirmity, the retaliation claim also cannot survive because of the distant temporal proximity between the relevant incidents. The allegedly retaliatory conduct occurred in October 2001, some five years after the Florida lawsuit was filed in 1996 (and three years after it was settled in 1998). This is plainly too remote to warrant the connection the law requires.

Plaintiff may attempt to direct the Court's attention to matters that occurred many years ago. These portions of Plaintiff's Complaint are time-barred. Plaintiff filed his Massachusetts Commission Against Discrimination Charge ("Charge") on April 4, 2002. As the six month statute of limitations was in effect at the time, all events prior to October 5, 2001 were time-barred. Plaintiff alleges a failure to promote and the law is well-settled that the continuing violation doctrine does not apply to such a discrete cause of action. As a result, under no circumstances are allegations arising from matters that pre-date October 5, 2001 appropriately before the Court.

Moreover, Plaintiff has failed to exhaust administrative remedies. Plaintiff remains a current employee of the West Springfield Home Depot today and has been employed there throughout the course of this litigation. In his Complaint, Plaintiff raised promotions he allegedly was denied, that arose *after* he filed his Charge and Complaint, as evidence of alleged race discrimination. Plaintiff also asserted in discovery that Defendant continues to deny him promotions. Because failure to promote claims are singular, discrete causes of action, Plaintiff was obliged either to amend his Charge to add these subsequent allegations or to bring a new Charge related to each of those subsequent events. Plaintiff did neither. As a result, later-arising failure to promote claims are not appropriately before this Court.

Ultimately, as set forth more fully herein, judgment should be entered in Defendant's favor because the undisputed facts reveal that Plaintiff cannot prevail as a matter of law on either of his causes of action.

## II.  STATEMENT OF UNDISPUTED FACTS

Defendant hereby incorporates and makes reference to its Local Rule 56.1 Statement Of Material Facts As To Which No Genuine Issue Remains To Be Tried ("Facts").[2]

## III.  ARGUMENT

### A.  Plaintiff's Claims Must Be Dismissed Because There Is No Issue Of Material Fact In Dispute And Defendant Is Entitled To Judgment As A Matter Of Law.

Plaintiff's claims must be dismissed because there is no issue of material fact in dispute and Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

---

[2] These facts are deemed undisputed for the purposes of Defendant's Motion for Summary Judgment only.

4

56(c).  The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; only a genuine issue of material fact is effective in this regard.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A "genuine" issue exists only if there is evidence from which a reasonable jury could return a verdict for the non-moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"'Even in employment discrimination cases where elusive concepts such as motive or intent are at issue,' summary judgment is appropriate if the non-moving party rests 'merely upon conclusory allegations, improbable inferences, and unsupported speculation.'"  *Benoit v. Technical Manufacturing Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).  The moving party may satisfy its initial burden "by pointing to the absence of adequate evidence supporting the nonmoving party's case."  *Michelson v. Digital Financial Services*, 167 F.3d 715, 720-21 (1st Cir. 1999).

**B.     Plaintiff's Race Discrimination Claim Must Be Dismissed as a Matter of Law.**

The one allegation that is timely and appropriately before the Court is Plaintiff's claim that he was not promoted in October 2001 from Associate to Department Supervisor due to his race.[3]  By Plaintiff's admission, this is the gravamen of this action. (Facts at ¶12).

It is well-established that where a plaintiff relies on indirect or circumstantial evidence in support of a discrimination claim, he can prove his case under the familiar three-stage analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) and its progeny.  *See Lipchitz v. Raytheon Co.*, 434 Mass. 493, 504-07 (2001).

---

[3]     Home Depot uses the terms "Department Supervisor" and "Department Head" interchangeably. (Facts at ¶10).

5

In stage one of this framework, a plaintiff has the initial burden of establishing a *prima facie* case. *See Beal v. Board of Selectmen of Hingham,* 419 Mass. 535, 540 (1995). The *prima facie* case for a failure to promote claim is: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for an open position for which he applied; (3) the plaintiff was rejected; and (4) someone not of his protected class, possessing the same or similar qualifications, filled the position instead. *See Radvilas v. Stop & Shop, Inc. et al.,* 18 Mass. App. Ct. 431, 439-440 (1984); *Ingram v. Brink's, Inc.*, 414 F.3d 222, 230 (1st Cir. 2005). Because the employees who were promoted over Plaintiff in October 2001 had superior qualifications than Plaintiff, and one of them was a member of his protected class, this claim must fail.

By way of background, Plaintiff started his Home Depot career in Florida in 1983. (Facts at ¶6). While in Florida, Plaintiff worked as an Associate and Department Supervisor. (Facts at ¶7). After voluntarily stepping down from Department Supervisor in 1996, Plaintiff remained employed in the Florida Home Depot as an Associate for the remainder of his time there. (Facts at ¶7). In 1999, at Plaintiff's request, Plaintiff transferred to the West Springfield, Massachusetts store as an Associate. (Facts at ¶8). On or about February 1, 1999, Defendant introduced and trained employees in the Job Preference Process System ("JPP"). To be considered for an available position under JPP, an employee first had to register his or her job preferences in JPP and must have met the minimum requirements for those particular positions. (Facts at ¶11).

In October 2001, four Department Supervisor positions were available in the following departments in the West Springfield store: Hardware, Floor and Wall, Plumbing, and Paint. (Facts at ¶13). Plaintiff was registered in JPP at this time as

6

interested in a promotion to Department Supervisor and was granted an interview. (Facts at ¶13).[4] Although hundreds of employees at the West Springfield store registered in JPP as "interested" in these promotions, only nineteen (19) employees were selected to be interviewed. (Facts at ¶14). Although Plaintiff testified he was only interviewed for the Hardware Department Supervisor position, it is undisputed the managers involved in the promotion process considered him for all four positions since he was qualified for all four positions. (Facts at ¶14).

Plaintiff was interviewed by Christopher Catalina ("Mr. Catalina"), the then-Assistant Store Manager at the West Springfield store. (Facts at ¶15). Plaintiff performed sufficiently well in the interview to proceed to be further considered; in Mr. Catalina's words, Plaintiff "passed" the interview. (Facts at ¶15). After the interview phase of the promotion process, the candidates who "passed" the interview were evaluated based primarily on their performance to date. (Facts at ¶16). It is uncontested that four other employees, each with superior performance evaluations than Plaintiff, were awarded the promotion to Department Supervisor. (Facts at ¶16).

       1.    <u>Plaintiff cannot satisfy his *prima facie case* because the employees promoted over Plaintiff all had superior qualifications than Plaintiff and one of them was a member of Plaintiff's protected class.</u>

Plaintiff cannot demonstrate a *prima facie* case of failure to promote based on race discrimination because it is undisputed in the record that all four (4) employees promoted in October 2001 had better qualifications than he. S*ee Ingram,* 414 F.3d at 230; *Eregie v. The Boston Company*, 1994 WL 879865, *4 (Mass.Superior 1994)

---

[4]     Despite the fact that Plaintiff worked as a Department Supervisor in Florida, he voluntarily stepped down from that position and transferred to West Springfield as an Associate. (Facts at ¶24). As a result, he had to earn a promotion to Department Supervisor in the same manner as any Associate. (Facts at ¶24).

7

(allowing summary judgment on failure to promote claim due to evidence that those promoted had better qualifications).

The four individuals who were promoted to Department Supervisor in October 2001 were: Matthew Bogle (who is of mixed race) for the Floor and Wall department, James Taylor (White) for the Paint department, Louis Courteau (White) for the Hardware department, and Robert Parent (White) for the Plumbing department. (Facts at ¶17). Though Plaintiff, like these four individuals, passed the interview, the next phase of the promotion process required an analysis of the recent performance of those who passed the interview. (Facts at ¶16).

In October 2001, Plaintiff had been rated consistently as giving "solid performance," which is a satisfactory performance rating (carrying a numerical ranking of "3"). (Facts at ¶19). It is undisputed that each of the four (4) employees promoted consistently was rated as having given "effective performance," which is an entire performance rating *higher* than Plaintiff received (carrying a numerical ranking of "4"). (Facts at ¶19). Plaintiff has not produced, and cannot produce, any evidence to the contrary. Without that, the inference of discrimination never arises and the claim must be dismissed as a matter of law. *See Ingram*, 414 F.3d at 230.

In addition to demonstrating that those promoted had the same or similar qualifications as Plaintiff, he also must demonstrate that they were not members of his protected class. *See Radvilas*, 18 Mass. App. Ct. at 439-40; *Pallotta v. Marriot Corp.*, 1993 WL 99931, *2 (D.Mass. 1993). Plaintiff is African-American. One of the four individuals promoted in October 2001 was Matthew Bogle. (Facts at ¶¶17-18). There is no dispute in the record evidence that Mr. Bogle is of mixed race. (Facts at ¶18).

8

Specifically, Mr. Bogle is one-half Black and the remainder of his national origin is a combination of French, Jamaican, and Native American. (Facts at ¶18). As one of the positions Plaintiff was interviewing for was filled by a member of his protected class, Plaintiff cannot get past the first step in the *McDonnell Douglas* three-step analysis. *See Pallotta*, 1993 WL 99931 at *2 (allowing summary judgment where the person promoted was a member of plaintiff's protected class).

        2.    Even if Plaintiff demonstrated his *prima facie* case, there is a legitimate business reason why Plaintiff did not receive the October 2001 promotion and no evidence of pretext.

Even if Plaintiff were able to satisfy his *prima facie* case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See Ingram,* 414 F.3d at 230. Indeed, Defendant has done so. As explained above, the employees who were promoted in October 2001 exhibited superior qualifications than Plaintiff. (Facts at ¶19).

Once Defendant has met its burden of persuasion, the burden shifts back to Plaintiff to show that the reason given was not the real reason but, rather, a pretext for discrimination. *See Ingram,* 414 F.3d at 230; *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997). Plaintiff cannot accomplish this for two reasons.

First, there is simply no evidence in this record of race discrimination in the West Springfield store. As explained above, one of the employees promoted in connection with the October 2001 promotion was a member of Plaintiff's protected class. (Facts at ¶18). What is more, in the West Springfield store, numerous African American employees were promoted in the period both prior and subsequent to October 2001, when

9

Plaintiff was interviewed for the Department Supervisor position. These individuals included:

- May 2000: Michael Wolcott (African American) was promoted to Department Supervisor;

- June 2001: Michael Wolcott (African American) was promoted to Assistant Store Manager;

- August 2001: Gisele Proctor (African American) was promoted to Department Supervisor;

- October 2001: Matthew Bogle (mixed race, as explained above) was promoted to Department Supervisor;

- July 2002: Rupert McKenzie (African American) was promoted to Department Supervisor;

- October 2005: Desiree Thorpe (African American) was promoted to Department Supervisor;

- March 2006: Theresa Wells (African American) was hired as a Department Supervisor;

- May 2006: Lionel Fleming (African American) was promoted to Department Supervisor.

(Facts at ¶20). Notably, these promotions and hires occurred both before and after October 2001. (Facts at ¶20). Plaintiff was employed at West Springfield at the time of each of these promotions or hires. (Facts at ¶20). This evidence is undisputed and forecloses any argument of pretext. *See Pallotta*, 1993 WL 99931, *2 (finding an absence of pretext where defendant promoted a member of plaintiff's protected class).

In addition to the plain record of promotions of non-Caucasian employees in the West Springfield store, any argument of pretext is belied by the fact that Plaintiff rejected a subsequent offer of a promotion to Department Supervisor and thereafter rejected numerous opportunities to interview for promotions to Department Supervisor.

10

Specifically, shortly after the October 2001 promotion opportunity, Plaintiff interviewed for, and was offered, a Department Supervisor position in the Auburn, Massachusetts store. (Facts at ¶21). Plaintiff rejected that promotion. (Facts at ¶21). Thereafter, Defendant consistently offered Plaintiff the opportunity to interview for department supervisor positions, for which he was registered in Home Depot's Job Preference Process, when those positions became available.[5] (Facts at ¶23). Consistently, Plaintiff rejected these offers to even interview. (Facts at ¶23). As Plaintiff acknowledges, he had to interview for a Department Supervisor promotion before he could be awarded the promotion. (Facts at ¶24).[6] Specific offers to interview for a Department Supervisor promotion, which Plaintiff rejected, and about which there is no dispute in the record, include:

- an offer in June 2002;
- an offer in November 2004;
- an offer in early 2005;
- an offer in May 2005;
- an offer in June 2005;
- an offer in August 2005; and

---

[5] When an employee expressed interest in a position via Defendant's Job Preference Process ("JPP"), the first step was for managers to ask the employees the managers wanted to interview if they remained interested in interviewing for that position when it became available. (Facts at ¶22). This step was taken because employees do not always keep their JPP registrations updated. (Facts at ¶22). Defendant can only interview a percentage of those registered for a particular position. As a result, management needed to determine which employees in JPP remained interested in interviewing for the position when it became available. (Facts at ¶22).

[6] Though Plaintiff's ultimate goal is to reach a management position, he concedes he must perform successfully as a Department Supervisor before he will be considered qualified and eligible for management. (Complaint, Ex. X to Facts; Facts at ¶24). Despite the fact that Plaintiff worked as a Department Supervisor in Florida, he voluntarily stepped down from that position and transferred to West Springfield as an Associate. (Facts at ¶24). His prior assignment in Florida gave him no greater "right" to a Department Supervisor position and he had to earn a promotion to Department Supervisor again in the same manner as any interested Associate.

- an offer in October 2005.

(Facts at ¶25). When asked at deposition why Plaintiff repeatedly turned down opportunities to interview for promotions, he simply answered: "I don't have to jump on every one that, you know, come[s] about." (Facts at ¶27).

Tellingly, once Plaintiff finally accepted an offer to interview for an open Department Supervisor position, he got the job. In 2006, Plaintiff interviewed for, and was awarded, the promotion to Department Supervisor of the Freight Team and remains in that position today. (Facts at ¶26). Plaintiff can present no evidence that Defendant's reason for denying his promotion in October 2001 was pretextual. When asked for evidence supporting Plaintiff's claim that he was not promoted due to his race, Plaintiff responded he has "no evidence" and that it is just his "own personal feeling." (Facts at ¶31). Plaintiff's race discrimination claim must fail as a matter of law.

C. **Plaintiff's Claim of Retaliation Fails as a Matter of Law Because Defendant Was Not Aware of the Protected Activity and There is No Causal Connection Between Plaintiff's Florida Lawsuit and the October 2001 Promotion Process.**

In addition to his race claim, Plaintiff alleges he did not receive the October 2001 promotion in retaliation for his previous lawsuit against Defendant in Florida. (Complaint, Ex. 5 to Facts).

To demonstrate a *prima facie* case of retaliation, Plaintiff must show that: "he reasonably and in good faith believed that the employer was engaged in wrongful discrimination, that he acted reasonably in response to his belief, and that the employer's desire to retaliate against him was a determinative factor in its decision to terminate his employment." *Abramian v. Pres. & Fellows of Harvard College*, 432 Mass. 107, 121 (2000). To establish causal connection, there must be some evidence the alleged

retaliators knew of the protected activity. *See Flanagan-Uusitalo v. D.T. Industries, Inc. et al.,* 190 F. Supp. 2d 105, 116 (D.Mass. 2001). In the present case, Plaintiff's claim for retaliation fails because there is no causal connection that gives rise to the inference of retaliation – there is no evidence anyone at the West Springfield Home Depot knew about the Florida lawsuit and the October 2001 decision is too temporally remote from the Florida lawsuit.

On or about August 16, 1995, while working at Home Depot in Fort Lauderdale, Florida, Plaintiff filed a Charge of Discrimination with the Broward County Human Rights Division (Case No. EM-393-8-95), and the Equal Employment Opportunity Commission (Case No. 15A950430), which alleged race and/or color discrimination. (Facts at ¶32). In 1996, Plaintiff commenced a lawsuit against Home Depot in the United States District Court District of Florida, Miami Division (Case No. 96-6560-Civ-Middlebrooks), entitled *Lionel M. Fleming et al, v. Home Depot U.S.A., Inc.*, ("Florida lawsuit"). (Facts at ¶32). The Florida lawsuit was later settled to the parties' mutual satisfaction on or about August 21, 1998. (Facts at ¶32).

Plaintiff transferred from the Florida store to the West Springfield store in August 1999. (Facts at ¶8). There is no record evidence that the individuals involved in the October 2001 promotion process even knew that Plaintiff had a previous claim against Defendant in Florida. (Facts at ¶34). Specifically, Christopher Catalina, Assistant Store Manager at the time of Plaintiff's arrival in 1999 and the person who interviewed Plaintiff in October 2001, did not know about the Florida lawsuit in October 2001. (Facts at ¶35). Mr. Catalina's best memory is that he first learned of the Florida lawsuit when

Plaintiff filed his MCAD charge, which preceded the instant lawsuit, in April 2002. (Facts at ¶35).

Finally, Plaintiff testified he could not recall ever sharing the fact of his Florida lawsuit with any West Springfield manager. (Facts at ¶35). Where Plaintiff cannot demonstrate the alleged retaliators knew of the Florida lawsuit, their October 2001 decision regarding Plaintiff's promotion certainly could not have been retaliatory. *See Flanagan-Uusitalo,* 190 F. Supp. 2d at 116 (requiring evidence retaliators had knowledge of protected activity in order to satisfy *prima facie* case of retaliation); *Lewis v. The Gillette Company*, 1993 WL 291771, *4 (D.Mass. 1993) (same).

Furthermore, even if there was evidence the alleged retaliators knew of the Florida lawsuit in October 2001, there still remains insufficient causal connection between the protected activity and the non-promotion. *See Abramian*, 432 Mass. at 121; *Flanagan-Uusitalo,* 190 F. Supp. 2d at 116 (requiring a causal connection for retaliation claim to survive summary judgment). Plaintiff filed the charge preceding the Florida lawsuit in 1995, filed the Florida lawsuit in 1996, and settled the matter in 1998. (Facts at ¶32). The promotion opportunity which Plaintiff claims he was wrongfully denied occurred in October 2001. Where causation is supported by a claim of temporal proximity, the adverse employment action must be "'*very closely*' connected in time to the protected activity . . . ." *Mole v. University of Massachusetts et al.,* 442 Mass. 582, 595 (2004) (emphasis in original). Even when construing the facts in the light most favorable to Plaintiff and using the most recent date related to the Florida lawsuit, the 1998 settlement, the alleged adverse employment action occurred ***three (3) years*** later – plainly too long to infer retaliatory motive from timing. *See Mole,* 442 Mass. at 595

14

(finding 3 and 4 years in between protected activity and adverse action too remote to support an inference of causation); *see also Lewis*, 1993 WL 291771 at *8 (finding 29 months too long to infer retaliation and citing precedent finding as little as 9 months and up to 33 months too long to suggest retaliation) (internal citations omitted)).

Plaintiff testified he had no evidence that the October 2001 decision was retaliatory, that it was just his "own personal feeling." (Facts at ¶36). Indeed, the only evidence Plaintiff offers to support this claim is that he was denied the promotion after the Florida lawsuit was filed and settled. (Complaint, Ex. 5, to Facts). "The mere fact, however, that one event followed another is not sufficient to make out a causal link." *MacCormack v. Boston Edison Co*., 423 Mass. 662, 672 (1996). Accordingly, Plaintiff's claim of retaliation cannot survive summary judgment.

### D. Elements of Plaintiff's Claims Must Be Dismissed To The Extent They Are Time-Barred.

Several factual allegations made in Plaintiff's Complaint are time-barred from supporting his Complaint. Plaintiff claims he was not promoted in October 2001 due to race discrimination and in retaliation for having filed a previous lawsuit against Home Depot in Florida in 1996. (Complaint, Ex. 5 to Facts). Plaintiff filed his MCAD Charge in this matter on April 4, 2002. (Facts at ¶3). At that time,[7] G.L. c. 151B, §5 required that charges be filed within six months of the alleged discriminatory act. *See Cuddyer v. The Stop & Shop Supermarket Company*, 434 Mass. 521, 531 (2001). Therefore, the only matters that can be considered are those that occurred on or after October 5, 2001. *See*

---

[7] Currently, the time limit in which to file MCAD claims is 300 days. *See* G.L. c. 151B § 5 (as amended by c. 223 of the Acts of 2002); 804 C.M.R. 1.10(2). However, the increased limitations period only applies to claims arising after November 5, 2002. (c. 223 of Acts of 2002, §4). For discrimination claims that accrued prior to November 5, 2002, the prescribed period was six months after the alleged act of discrimination. G.L. c. 151B, § 5 (prior to amendment).

15

*Cuddyer*, 434 Mass. at 531. In his Complaint, Plaintiff refers to matters that occurred *prior* to October 5, 2001. (Complaint, Ex. 5 to Facts). These earlier matters, however, are time-barred and not appropriately before the Court.

The only applicable exception to the statute of limitations period is the doctrine of "continuing violation." *See* 804 Code Mass. Regs. §1.03(2); *Cuddyer*, 434 Mass. at 531. The continuing violation doctrine permits certain claimants to seek damages for events outside of the six month period if at least one timely incident "substantially relates to earlier incidents . . . such that the [timely] incident anchors all related incidents." *Cuddyer*, 434 Mass. at 533. However, the United States Supreme Court "has rejected use of a continuing violation doctrine for claims arising from discrete discriminatory acts," such as failure to promote claims. *See Morrison v. Northern Essex Community College,* 56 Mass. App. Ct. 784, 794 (2002) (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-14, 122 S. Ct. 2061 (2002)). Specifically:

> [d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable `unlawful employment practice.' The Plaintiff can only file a charge to cover discrete acts that `occurred' within the appropriate time period.

*Morgan,* 523 S. Ct. at 114; *see also Ledbetter v. The Goodyear Tire & Rubber Co., Inc.,* 127 S. Ct. 2162, 2169 (2007) (finding a fresh claim arises each time a discrete discriminatory act occurs).

In the present case, Plaintiff alleges broadly that Defendant has failed to promote him "for the past 13 years, because of [his] race as an African-American." (Complaint, Ex. 5 to Facts). More specifically, Plaintiff alleges he was retaliated against in or around

16

1995.  Plaintiff alleges this retaliation came in the form of a failure to be promoted and an unwarranted transfer.  (Complaint, Ex. 5 to Facts).

Under *Morgan*, it is clear these allegations that Plaintiff was wrongfully transferred and not promoted, which occurred prior to October 5, 2001 and as long as thirteen (13) years ago, are "discrete acts" that are time-barred.  *See Miller v. New Hampshire Dept. of Corrections*, 296 F.3d 18, 22 (1st Cir. 2002) (refusing to apply continuing violation doctrine to time-barred discrete discriminatory act).  Accordingly, these allegations are not appropriately before the Court.

      **E.**      **Plaintiff's Claims of Race Discrimination Must Be Dismissed To The Extent They Exceed the Scope of Plaintiff's MCAD Charge.**

General Laws chapter 151B "requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination." *Lattimore v. Polaroid Corp*., 99 F.3d 456, 464 (1st Cir. 1996); G.L. c. 151B, §§5, 9.  The charge filed with the MCAD must detail the particulars of the alleged discriminatory conduct.  *See* G.L. c. 151B, §§ 5, 9; *Lattimore*, 99 F.3d at 464.  The scope of the lawsuit can only "`encompass acts of discrimination which the MCAD investigation could reasonably be expected to uncover.'"  *Stephenson v. State Street Bank & Trust Company*, 924 F. Supp. 1258, 1276 (D.Mass. 1996) (quoting *Conroy v. Boston Edison Company*, 758 F. Supp. 54, 58 (D.Mass. 1991)).

The purpose behind this requirement "is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation."  *Lattimore,* 99 F.3d at 464.  This purpose "would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action."  *Lattimore,* 99 F.3d at 464.  Massachusetts courts have strictly

17

construed these requirements and it is well settled that "Plaintiff's *failure to adhere to [them] require[s] the dismissal of his complaint*." *Charland v. Muzi Motors*, 417 Mass. 580, 586 (1994) (emphasis added); *see also Fant v. New England Power Co. et al.*, 239 F.3d 8, 12 n. 3 (1st Cir. 2001).

Plaintiff has violated this requirement of Chapter 151B. The only allegation of race discrimination in Plaintiff's Charge is that he was wrongfully denied a promotion in October 2001. (Facts at ¶¶3-4). However, in the Complaint, Plaintiff alleges he was wrongfully denied promotions to the Lumber and Hardware departments in 2003 and to the Lumber and Building Materials departments in 2004. (Complaint, Ex. 5 to Facts). In addition, in discovery, Plaintiff also generally asserts Defendant continues to deny him promotions -- failed opportunities for promotion that occurred *after* he filed the MCAD Charge but that he never sought to add to the Charge by way of amendment or file a separate Charge. (Complaint, Ex. 5 to Facts; Facts at ¶28). If Plaintiff wanted these matters considered by the Court, he was obligated to first present them to the MCAD. *See Lattimore,* 99 F.3d at 464. Plaintiff did not amend his Charge to add these allegations or bring new charges related to each of these allegations. Indeed, Plaintiff understood he had the right do so, as he did amend his Charge once to include a claim of retaliation. (Facts at ¶4).[8]

In cases involving one ongoing violation, a claimant is not required to amend the MCAD charge as a prerequisite to relying upon later incidents that are part of that ongoing violation. *See, e.g., Smith v. Atlantic*, 63 Mass. App. Ct. 702, 723 (2005).

---

[8] Plaintiff filed his Charge in April 2002 and his Complaint in October 2004. (Facts at ¶¶3-5). Plaintiff has enjoyed continued employment at the West Springfield Home Depot during this time period and remains employed there today. (Facts at ¶¶8-10).

18

However, with a failure to promote claim, this approach is illogical and impermissible. As the United States Supreme Court has held, such claims are "discrete discriminatory acts" – each time one occurs, a separate and distinct cause of action arises. *See Morgan*, 536 U.S. at 114; *Ledbetter*, 127 S. Ct. at 2169. In the case in which the plaintiff is a current employee during the course of litigation, that plaintiff knows each time he believes he was wrongfully denied a promotion. *See Morgan*, 536 U.S. at 114; *Ledbetter*, 127 S. Ct. at 2169. The goals of the exhaustion requirement cannot be accomplished if a plaintiff is permitted to allege one wrongful denial of a promotion in the MCAD Charge and then proceed to treat every missed promotion opportunity that arises in the years following, during which he continues to be employed by the defendant, as additional bases for his claim. *See Patoski v. Jackson*, 477 F. Supp. 2d 361, 364 (D.Mass. 2007) ("the purposes of administrative exhaustion `would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action.'") (quoting *Lattimore*, 99 F.3d at 464)). For these reasons, Plaintiff cannot be permitted to rely on causes of action that arose after he filed his Charge that were not included in his Charge initially or by amendment.

## IV.     CONCLUSION

For the foregoing reasons, all of Plaintiff's claims must be dismissed as a matter of law and judgment must enter in favor of Defendant.

        Respectfully submitted,

        HOME DEPOT, U.S.A., INC.
        By its attorneys,


        /s/ Tracy Thomas Boland_____
        Joseph P. McConnell (BBO No. 566412)
        Tracy Thomas Boland (BBO No. 638878)
        MORGAN, BROWN & JOY, LLP
        200 State Street
        Boston, Massachusetts  02109
        617 523-6666

Date: November 9, 2007


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel for the plaintiff, Timothy J. Ryan, Ryan & Downey, P.C., 1441 Main Street, Suite 1040, Springfield, Massachusetts 01103, by electronic notification, this 9th day of November, 2007.

        /s/ Tracy Thomas Boland
        Tracy Thomas Boland