UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LIONEL FLEMING,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**HOME DEPOT U.S.A., INC.,**<br><br>        **Defendant.** | **Civil Action No.  04-30213 MAP** |

## DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE REMAINS TO BE TRIED

In accordance with Rule 56.1 of the Local Rules of Civil Procedure and Rule 56 of the Federal Rules of Civil Procedure, defendant Home Depot U.S.A., Inc. hereby makes the following statement of material facts as to which no genuine issue remains to be tried:[1]

Overview of Parties

1. Plaintiff, Lionel Fleming ("Plaintiff"), resides at 76 Temple Street, Springfield, Massachusetts 01103.  (Second Deposition of Lionel Fleming ("Fleming Dep. II"), attached hereto as Exhibit 1, at 6).

2. Defendant, Home Depot U.S.A., Inc. ("Defendant" or "Home Depot"), has a place of business at 179 Dagget Drive, West Springfield, Massachusetts 01089. (Affidavit of Christopher O. Catalina ("Catalina Aff.") attached hereto as Exhibit 2 at ¶1).

---

[1] These facts are deemed undisputed for the purposes of Defendant's Motion for Summary Judgment only.

Procedural History

3.  On April 4, 2002, Plaintiff filed a Charge with the Massachusetts Commission Against Discrimination ("MCAD"). (Charge attached hereto as Exhibit 3). The Charge alleged Plaintiff was wrongfully denied a promotion in October 2001 due to race discrimination. (Charge, Ex. 3).

4.  On or about November 10, 2003, Plaintiff filed a Motion to Amend Discrimination Complaint with the MCAD. (Motion to Amend and MCAD's granting of same attached hereto collectively as Exhibit 4). That Motion asserted an additional claim of unlawful retaliation for having filed a race discrimination lawsuit against Home Depot in the United States District Court, District of Florida, Miami Division on May 24, 1996 (which was settled in 1998). (Motion to Amend, Ex. 4). On January 5, 2004, the MCAD granted the Motion to Amend. (MCAD Order granting Motion to Amend, Ex. 4).

5.  After removing the MCAD case and being released from the jurisdiction of the MCAD, on or about October 4, 2004, Plaintiff filed the Complaint in the United States District Court for the District of Massachusetts. (Complaint attached hereto as Exhibit 5).

Plaintiff's Employment History at Home Depot

6.  Plaintiff began his employment with Home Depot in Florida in 1983. (First Deposition of Lionel Fleming ("Fleming Dep. I"), attached hereto as Exhibit 6, at 103).

7.  While in Florida, Plaintiff worked as an Associate and, later, a Department Supervisor. (Complaint, Ex. 5). After voluntarily stepping down from the

      Department Supervisor position in 1996, Plaintiff remained employed in the Florida Home Depot as an Associate for the remainder of his time there. (Letter detailing step-down attached hereto as <u>Exhibit 7</u>).

8.    In 1999, at Plaintiff's request, Plaintiff transferred to the West Springfield, Massachusetts Home Depot store as an Associate. (Fleming Dep. I, Ex. 6, at 38).

9.    In February 2003, Plaintiff laterally changed positions to become a Cross-Merchandising Associate. (Fleming Dep. I, Ex. 6, at 130).

10.    In May 2006, Home Depot promoted Plaintiff to become a Department Supervisor of the Freight Team.[2] (Fleming Dep. II, Ex. 1, at 9; Catalina Aff., Ex. 2, at ¶11). Plaintiff remains employed in that position today. (Fleming Dep. II, Ex. 1, at 9).

Home Depot's Job Preference Process System

11.    On or about February 1, 1999, Defendant introduced the Job Preference Process System ("JPP"). All employees received training on JPP. (Deposition of Christopher Catalina ("Catalina Dep."), attached hereto as <u>Exhibit 8</u>, at 19-20). To be considered for an available position, an employee must first register his or her job preferences in JPP and meet the minimum requirements for those particular positions. (Fleming Dep. I, Ex. 6, at 63-65; Catalina Dep., Ex. 8, at 19-24). It is not uncommon for large numbers of employees to be registered as "interested" for the same position at the same time. As a result, not every employee who is registered for a position will be selected for an interview. (Fleming Dep. I, Ex. 6, at 63-65; Catalina Dep., Ex. 8, at 19-24).

---

[2]    The terms "Department Supervisor" and "Department Head" are used interchangeably at the West Springfield Home Depot. (Fleming Dep. I, Ex. 6, at 91; Catalina Aff., Ex. 2, at ¶14).

3

### The October 2001 Opportunity to be Promoted

12. Plaintiff's allegations in the instant suit stem primarily from the fact that he was not promoted after being interviewed for a Department Supervisor position in October 2001. (Fleming Dep. I, Ex. 6, at 70).

13. In October 2001, four Department Supervisor positions were available in the West Springfield store: Hardware, Floor and Wall, Plumbing, and Paint. (Fleming Dep., I, Ex. 6 at 72; Catalina Dep., Ex. 8 at 15-16). Plaintiff was registered in JPP for a Department Supervisor position at the time. (Fleming Dep. I, Ex. 6, at 70).

14. Although hundreds of employees at the West Springfield store registered in JPP as "interested" in these promotions, only nineteen (19) individuals were selected to be interviewed. (Catalina Aff., Ex. 2, at ¶2). Although Plaintiff testified he was only interviewed for the Hardware Department Supervisor position, it is undisputed that the managers involved in the promotion process considered him for all four positions since he was eligible to be considered for all four positions. (Fleming Dep. I, Ex. 6, at 71-73; Catalina Aff., Ex. 2, at ¶2).

15. Plaintiff was interviewed by Christopher Catalina ("Mr. Catalina"), the then-Assistant Store Manager at the West Springfield store. (Fleming Dep. I, Ex. 6, at 70-71; Catalina Dep., Ex. 8, at 15-16). Plaintiff performed sufficiently well in the interview to proceed to be further considered; in Mr. Catalina's words, he "passed" the interview. (Catalina Dep., Ex. 8, at 18).

16. After the interview phase of the promotion process, the candidates were evaluated based primarily on their performance to date. (Catalina Aff., Ex. 2, at ¶3). Plaintiff was not selected for promotion in October 2001 because four other

4

qualified candidates who also passed the interview had superior performance to date than Plaintiff, as reflected in their performance evaluations. (Catalina Aff., Ex. 2, at ¶3).

17. The four individuals who were promoted to Department Supervisor in October 2001 were: Matthew Bogle (who is of mixed race) for the Floor and Wall department, James Taylor (White) for the Paint department, Louis Courteau (White) for the Hardware department, and Robert Parent (White) for the Plumbing department. (Catalina Aff., Ex. 2, at ¶4).

18. There is no dispute in the record evidence that Mr. Bogle is of mixed race. (Fleming Dep. I, Ex. 6, at 88; Affidavit of Matthew Bogle, attached hereto as Exhibit 9, at ¶3). Specifically, Mr. Bogle is one-half Black and the remainder of his national origin is a combination of French, Jamaican, and Native American. (Bogle Aff., Ex. 9, at ¶3).

19. In October 2001, Plaintiff had been consistently rated as giving "solid performance," which is a satisfactory performance rating (carrying the numerical ranking of "3"). (Performance evaluations for Plaintiff leading up to October 2001 attached hereto collectively as Exhibit 10). Each of the four (4) employees promoted consistently was rated as having given "effective performance," which is an entire performance rating higher than Plaintiff received (carrying the numerical ranking of "4"). (Performance evaluations for Matthew Bogle attached hereto collectively as Exhibit 11; for Louis Courteau as Exhibit 12; for Robert Parent as Exhibit 13; and for James Taylor as Exhibit 14).

20. There is no evidence that race played any role in the October 2001 promotions. (Fleming Dep. I, Ex. 6, at 77-79). Rather, in the West Springfield store, numerous African American employees have been promoted in the period both prior and subsequent to October 2001, when Plaintiff was interviewed for the Department Supervisor position. These individuals included:

- May 2000: Michael Wolcott (African American) was promoted to Department Supervisor;

- June 2001: Michael Wolcott (African American) was promoted to Assistant Store Manager;

- August 2001: Gisele Proctor (African American) was promoted to Department Supervisor;

- October 2001: Matthew Bogle (mixed race, as explained above) was promoted to Department Supervisor;

- July 2002: Rupert McKenzie (African American) was promoted to Department Supervisor;

- October 2005: Desiree Thorpe (African American) was promoted to Department Supervisor;

- March 2006: Theresa Wells (African American) was hired as a Department Supervisor;

- May 2006: Lionel Fleming (African American) was promoted to Department Supervisor.

(Fleming Dep. I, Ex. 6, at 80-81; Catalina Aff., Ex. 2, at ¶5). Plaintiff was employed at the time of each of these promotions/hires. (Catalina Aff., Ex. 2, at ¶5).

<u>Plaintiff's Rejection of Subsequent Promotion Offers<br>And of Subsequent Opportunities to Interview for Promotions</u>

21. Shortly after the October 2001 promotion opportunity described above, Plaintiff interviewed for, and was offered, a Department Supervisor position in the Auburn, Massachusetts Home Depot store. (Fleming Dep. I, Ex. 6, at 82-85;

6

Catalina Aff., Ex. 2, at ¶6). Plaintiff rejected that promotion. (Fleming Dep. I, Ex. 6, at 84-88; Catalina Aff., Ex. 2, at ¶6).

22. When an employee expressed interest in a position via JPP, the first step was for the managers ask the employees the managers wanted to interview if he or she remained interested in interviewing for that position when it became available. (Catalina Aff., Ex. 2, at ¶7). This step was taken because employees did not always keep their JPP registrations updated. (Catalina Aff., Ex. 2, at ¶7). As not every person registered for a position would be interviewed for that position, management needed to determine if an employee in JPP remained actively interested in interviewing for that position. (Catalina Aff., Ex. 2, at ¶7).

23. After Plaintiff rejected the Auburn store position, Defendant consistently offered Plaintiff the opportunity to interview for department supervisor positions when those positions became available. Consistently, Plaintiff rejected these offers to even interview. (Catalina Aff., Ex. 2, at ¶8).

24. Plaintiff was obligated to interview for a Department Supervisor promotion before he could be awarded the promotion. (Fleming Dep. I, Ex. 6, at 120; Catalina Aff., Ex. 2, at ¶9). Despite the fact that Plaintiff had worked as a Department Supervisor in Florida, he voluntarily stepped down from that position and transferred to West Springfield as an Associate. His prior assignment in Florida gave him no greater "right" to a Department Supervisor position. (Letter, Ex. 7; Catalina Aff., Ex. 2, at ¶9). As a result, he had to earn a promotion to Department Supervisor in the same manner any interested Associate would. (Catalina Aff., Ex. 2, at ¶9).

25. Specific offers to interview for a Department Supervisor promotion, which Plaintiff rejected, and about which there is no dispute in the record, include: an offer in June 2002; an offer in November 2004, an offer in early 2005; and offers in May, June, August, and October 2005. (Penny Allen Statement regarding June 2002 offer, attached hereto as Exhibit 15; Fleming Dep. I, Ex. 6, at 113-124; Catalina Dep., Ex. 8, at 32-34; 53-54; 59-60; Catalina Aff., Ex. 2, at ¶10).

26. In 2006, Plaintiff finally accepted Mr. Catalina's offer to interview for yet another open Department Supervisor position. Plaintiff interviewed for, and was awarded, the promotion to Department Supervisor of the Freight Team. (Fleming II, Ex. 1, at 9-10; Catalina Aff., Ex. 2, at ¶11).

27. When asked why Plaintiff repeatedly turned down opportunities to interview for promotions, he answered: "I don't have to jump on every one that, you know, come[s] about." (Fleming Dep. I, Ex. 6, at 126-28).

28. Plaintiff asserted in his answers to Interrogatories that he now continues to be "locked out" of the next level of promotion (presumably Assistant Store Manager, which is the next promotional opportunity above Department Supervisor). (Plaintiff's Answers to Defendant's Second Set of Interrogatories, Numbers 2 and 17, attached hereto as Exhibit 16).

29. By Plaintiff's own admission, in all the many years he has worked for Defendant, he has never complained to anyone at Home Depot that he felt he was not getting promoted because of his race. (Fleming Dep. I, Ex. 6, at 103-04; Fleming Dep. II, Ex. 1, at 37).

30. In fact, in all the years of Plaintiff's employment, Plaintiff never even complained internally to anyone about the fact that he had not been promoted to Department Supervisor (due to any reason) at any time after he was denied the promotion in October 2001 till the present. (Fleming Dep. I, Ex. 6, at 128-130).

31. When asked for evidence supporting Plaintiff's claim that he was not promoted due to his race, Plaintiff responded he has "no evidence" and that it is just his "own personal feeling." (Fleming Dep. I, Ex. 6, at 77-79).

Plaintiff's Prior Lawsuit Against Home Depot

32. On or about August 16, 1995, while working at Home Depot in Fort Lauderdale, Florida, Plaintiff filed a Charge of Discrimination with the Broward County Human Rights Division (Case No. EM-393-8-95), and the Equal Employment Opportunity Commission (Case No. 15A950430), which alleged race and/or color discrimination. In 1996, Plaintiff removed this claim of discrimination from the Florida administrative agencies and commenced a lawsuit against Home Depot in the United States District Court District of Florida, Miami Division (Case No. 96-6560-Civ-Middlebrooks), entitled *Lionel M. Fleming, et al, v. Home Depot U.S.A., Inc.*, ("Florida lawsuit"). The Florida lawsuit was later settled to the parties' mutual satisfaction on or about August 21, 1998.

33. Plaintiff's retaliation claim amounts to his allegation that he was not promoted in October 2001 in retaliation for having brought the Florida lawsuit (Complaint, Ex. 5).

34. There is no record evidence Plaintiff ever told anyone in the West Springfield store about his Florida lawsuit or that anyone in West Springfield ever mentioned the Florida lawsuit to him. (Fleming Dep., I, Ex. 6, at 106-07).

35. There is no record evidence to support a claim that the individuals involved in the October 2001 promotion process even knew that Plaintiff had a previous claim against Defendant in Florida. Christopher Catalina, Assistant Store Manager at the time of Plaintiff's arrival and who interviewed Plaintiff in October 2001, did not know about the Florida lawsuit in October 2001. (Catalina Aff., Ex. 2, at ¶12; Catalina Dep., Ex. 8, at 14-15). Mr. Catalina's best memory is that he first learned of that lawsuit when Plaintiff filed his MCAD charge preceding the instant lawsuit (which was in or around April 2002). (Catalina Aff., Ex. 2, at ¶12).

36. When asked for evidence supporting Plaintiff's claim that he was not promoted in retaliation for his Florida lawsuit, Plaintiff responded he has "no evidence" and that it is just his "own personal feeling." (Fleming Dep. I, Ex. 6, at 77-79).

          Respectfully submitted,

          HOME DEPOT, U.S.A., INC.
          By its attorneys,

          /s/ Tracy Thomas Boland
          Robert P. Joy (BBO No. 254820)
          Joseph P. McConnell (BBO No. 566412)
          Tracy Thomas Boland (BBO No. 638878)
          MORGAN, BROWN & JOY, LLP
          200 State Street
          Boston, Massachusetts  02109
          617 523-6666

Date: November 9, 2007

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing upon counsel for the plaintiff, Timothy J. Ryan, by electronic notification, this 9th day of November, 2007.

                                      /s/ Tracy Thomas Boland
                                      Tracy Thomas Boland