## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

LIONEL FLEMING,

                Plaintiff    |    **Case No. 04-30213-MAP**

vs.    |

    |

HOME DEPOT INC.,    |

                Defendant    |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED[1]

Pursuant to Fed. R. C. P. 56 and Local Rule 56.1, the Plaintiff hereby responds to Defendant's Statement of Undisputed Material Facts. In addition, Plaintiff submits a concise statement of material facts as to which there exists a genuine issue to be tried.

## A.    RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS:

The Plaintiff responds to the specific paragraphs of the Defendant's statement as follows. Any paragraph for which there is no response should be deemed admitted.

5.    This action was initially filed in the Hampden County Superior Court and the Defendant removed it to the United States District Court upon a claim of diversity jurisdiction. (See Court's file on this claim.)

8.    The Plaintiff transferred to Massachusetts in the aftermath of his settlement of race discrimination claim against Home Depot in Florida. At the time he transferred he dealt directly

---

[1] The Plaintiff does not oppose Defendant's Motion for Summary Judgment with respect to Count I, the breach of contract claim. This case is a gender based discrimination claim.

with Russ Founds, the Store Manager of Home Depot's West Springfield Store and Mr. Founds was aware of the Florida case and Mr. Fleming's desire to relocate from Florida in order to get a fresh start. (Fleming Affidavit, Exhibit 1)

10.    While Plaintiff is currently a Department Supervisor, he has recently been subjected to negative performance reviews. These negative reviews have made a difficult situation all that more difficult.

15.    The Plaintiff cannot state that he was considered for all four positions and any attempt to put words in his mouth must be rejected. While Plaintiff allegedly "passed" the interview he was not selected for a supervisory position. Additionally, Home Depot fails to report to the Court that Mr. Fleming was by-passed due to off hand comments he allegedly made to another supervisor. That supervisor, Ken Thompson, reportedly told the then store manager at a mangers' meeting that he spoke to Mr. Fleming about the promotion and that Mr. Fleming was unenthusiastic about the promotion and acted as though he was doing the company a favor in agreeing to accept a promotion. These comments which were not further investigated effectively poisoned the well for Mr. Fleming and he was not selected for promotion to Department Supervisor during the October-November 2001 timeframe. (Fleming Answers to Interrogatories, Exhibit 2; Catalina Deposition pp. 15-19, 28-31, Exhibit 3)

16.    The other four (majority) candidates did not have superior performance evaluations. In September 2001 Mr. Fleming received an Associate Performance Notice, for good job performance. Also in September 2001 he received five merit badges for high performance.

Finally, his July 2001 performance evaluation and his December 2001 performance evaluation (the December evaluation was not provided by Defendant in its Motion) both report an overall category of 3 and 4 respectively. (Please see Exhibit 4 for the Associate Performance Notice, Merit Badge Award and December 2001 Performance Evaluation)

17.     The four individuals were substantially younger than Mr. Fleming and had considerably less time and experience with the company. Mr. Courtreau was hired in June 2000, Mr. Parent started with Home Depot July 1999 (Exhibits 12 and 13 to Defendant's Motion)

19.     Mr. Fleming had been rated as a solid performer at a "3" ranking as of June 2001 and that rating improved to a "4" of achiever in December 2001 evaluation. In addition, he had received special recognition and merit badges for a job well done during the September through October 2001 time period.

20.     Race did a role. The role was the insidious comments that were articulated by Ken Thompson in a mangers' meeting. As Mr. Catalina recalls, Thompson, an assistant store manger, told the group of managers that in his private discussion with Mr. Fleming about the promotion Mr. Fleming displayed a lack of enthusiasm and that Mr. Fleming acted as though he was doing the Company a favor in applying for the promotion. This comment was made while the promotions were being considered. No manager ever checked back with Mr. Fleming as to whether he sought a promotion or to verify Thompson's comments. Further, Mr. Catalina who interviewed him never detected or reported that Mr. Fleming was indifferent or unenthused about a promotion. (Catalina Deposition, pp. 28-31, Exhibit 3)

21.    Mr. Fleming disputes that the Auburn opportunity was shortly after this bypass. He did reject the opportunity to transfer to the Auburn store due, in part, to the fact that the transfer would involve a daily commute of approximately 100 miles.

25.    The Penny Allen statement is inadmissible. Ms. Allen is deceased. The note in question does not qualify as a business record and must be excluded.

26.    Mr. Fleming did interview for and was promoted to Department Supervisor in 2006.

29.    Clearly, Mr. Fleming has complained by virtue of his MCAD Complaint and this action. Mr. Fleming has tried hard to keep this litigation out of his day-to-day job duties.

30.    As noted above, he has made his objection heard by the MCAD filing and filing of this action in Hampden County Superior Court.

31.    The Plaintiff objects to the statements contained in paragraph 31. The Defendants in its Memorandum in Support of its Motion notes that this discrimination claim is based upon indirect evidence. Mr. Fleming admittedly has no "direct" evidence of a race based denial. As countless Court decisions have observed direct evidence of an illegal bias is rarely available. As such, there should be no negative inference drawn when Mr. Fleming concedes in answers at deposition that he has no (direct) evidence of race based discrimination.

4

34.    Russ Founds, the West Springfield Store Manager, knew that Lionel Fleming was seeking to transfer due to the Florida lawsuit.  Mr. Catalina worked in the West Springfield sore as an assistant manager under Mr. Founds.  (Catalina Deposition, pp. 9-10, Exhibit 3; Fleming Affidavit, Exhibit 1)

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL DISPUTED FACT

1.    Lionel Fleming worked for Home Depot for sixteen years in Florida.  While in Florida he was subjected to racially discriminatory and harassing conduct by co-workers within Home Depot.  To secure his rights and to be free from the racial harassment, Mr. Fleming instituted suit and that claim was settled. (Fleming Affidavit, Exhibit 1)

2.    Lionel Fleming, seeking to continue his career in Home Depot sought and obtained a transfer from Florida to Home Depot's store in West Springfield, Massachusetts.

3.    Lionel Fleming, at all time, has been a reliable, dedicated and loyal Home Depot employee. (Catalina Deposition, pp. 32-33, Exhibit 3)

4.    In October 2001 Lionel Fleming sought a promotion to department supervisor.  At all times Lionel Fleming was focused on a promotion and dedicated to securing a promotion.

5.    Lionel Fleming denies that he ever spoke with Ken Thompson about a prospective promotion and that he suggested or implied that he was doing the Company a favor in applying for the promotion. (Fleming Affidavit, Exhibit 1)

6.      Lionel Fleming was never contacted by anyone from the store management to confirm or verify the remarks that Ken Thompson attributed to Mr. Fleming. (Fleming Affidavit; Catalina Deposition, pp. 28-31; Exhibit 3)

7.      As of October 2001 Mr. Fleming had eighteen years of experience within Home Depot. He has served as department supervisor on five occasions previously. He had just received five merit badges, a written recognition for his fine performance.

8.      Clearly, from June 2001 through December 2001 Mr. Fleming's performance did not decline due to the fact that he received a "V" or "4" overall rating in his December 2001 performance evaluation. (Exhibit 4)

9.      The other candidates were significantly junior to Mr. Fleming both in years served at Home Depot, prior experience as department supervisor in Home Depot, and in age.

10.     Within Home Depot, there are various levels. The most common classification is Associate. The next grade above Associate is Department Supervisor. Beyond Department Supervisor is Assistant Store Manager, and Store Manager. In order for an Associate to advance to an Assistant Store Manager level, or beyond, the Associate must first be promoted to Department Supervisor. (Fleming Affidavit, Exhibit 1)

plaintiff submits the Court must deny defendant's Motion for Summary Judgment in its entirety.

**The Plaintiff,**
**Lionel Fleming**

By: _____
Timothy J. Ryan, BBO#551680
Ryan & Downey, P.C.
1441 Main Street, Suite 1040
Springfield, MA 011030-1450
T: (413) 214-6080
F: (413) 214-6085

### Certificate of Service

I, Timothy J. Ryan, hereby certify that I have caused a copy of this motion to be served on counsel for the Defendants, via U.S. Mail, postage prepaid, on this the 3rd day of December, 2007.

_____
Timothy J. Ryan

# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIONEL FLEMING, | | |
| | Plaintiff | **Case No. 04-30213-MAP** |
| vs. | | |
| | | |
| HOME DEPOT INC., | | |
| | Defendant | |

### AFFIDAVIT OF LIONEL FLEMING

I, Lionel Fleming, state as follows:

1.    I am a resident of Springfield, Massachusetts, the plaintiff in this action, and I am African-American.

2.    In the mid to late 1990's, while employed by Home Depot, myself and several other colleagues were subject to racial harassment and discrimination by other Home Depot employees. We filed legal claims and ultimately the matters were settled. After settlement, I sought a transfer from Florida in order to get a fresh start with Home Depot. I knew Russ Founds personally and based upon friendship I asked him if I could transfer to his store. During these discussions I am sure I made Russ Founds aware of the reasons why I sought a transfer.

3.    I do not recall ever speaking with Ken Thompson about the four open department supervisor positions in the September-October 2001 time frame. Furthermore, I never told Mr. Thompson that I did not want a promotion, or that I was doing the company a favor in accepting a promotion.

4.    Within the Home Depot management structure, in order for an internal candidate to advance to the assistant manger or store manager position, that individual must first be selected to serve as a department supervisor. By virtue of the by-pass I experienced in 2001 my opportunity to advance within the Home Depot's ranks was significantly damaged and delayed and as a result I have been denied significant earnings and benefits.

Signed under the pains and penalties of perjury this __3__ day of December, 2007.

_Lionel M. Fleming_
Lionel Fleming

# Exhibit 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

LIONEL FLEMING,

               Plaintiff

vs.

HOME DEPOT INC.,

               Defendant

**Case No. 04-30213-MAP**

## PLAINTIFF LIONEL FLEMING'S ANSWERS
## TO DEFENDANT'S SECOND SET OF INTERROGATORIES

### Interrogatory No. 1:

Identify the persons, including their addresses, telephone numbers, and job titles, who possesses knowledge pertaining to any fact or issue involved in this case. Include in your response a description of the substance of their knowledge, a statement of whether you presently expect to call them as witnesses at trial, and a description of all documents which support, tend to support, or tend to refute your response to this Interrogatory.

### Answer

The Plaintiff objects to this request on the grounds that it is overbroad and unduly invasive. Without waiving this objection, the plaintiff states that he believes that the great majority of co-workers have a positive and favorable impression of him.

### Interrogatory No. 2:

Identify each document that you intend to use as evidence in support of any claim asserted in your Complaint, or in opposition to any defense or affirmative defense asserted by Home Depot, giving a brief description of what you believe each document proves, and identify all documents which support, tend to support, or tend to refute your response to this Interrogatory.

### Answer

The plaintiff has no specific documents at this time responsive to this request. The plaintiff was subject to racial discrimination and harassment in a Home Depot store in Florida. A suit was brought and that suit was settled. Thereafter, Mr. Fleming transferred to the West Springfield store. The transfer was made in the hopes of securing a management position.

Despite repeated requests for management positions, the institution of this claim with the MACAD in 2002 the plaintiff is still locked out of consideration for a management position.
**Interrogatory No. 3:**

List each element of damages that you are claiming and include in your response the following: the category into which item of damages falls, (i.e. general damages, special or consequential damages, interest, and any other relevant categories); the factual basis for each item of damages; the amount claimed for each; an explanation of how each amount was calculated, including any mathematical formula; and a description of each document on which such calculation was based or which supports, tends to support, or tends to refute your response to this Interrogatory.

**Answer**

The damages involved in this suit include economic and emotional damages. The economic damages involve the pay differential between what Mr. Fleming would have earned as a manager and as compared to his actual earnings since 2000 or 2001 to date. At this point the plaintiff does not have reliable figures as to the pay grades for department supervisors or assistant managers. The economic damages are ongoing. As such there would be a claim for front pay damages.

With respect to emotional distress, I have not treated with any psychologist, counselor or mental health provider. However, Home Depot's refusal to acknowledge or act upon my promotion has caused anxiety, sleeplessness over the years.

**Interrogatory No. 4:**

Identify any person other than counsel who has provided you with a written statement or opinion of any kind which relates to any allegation, claim, defense, or affirmative defense raised in this lawsuit, and for each person, describe the substance of such statement or opinion and the date you obtained such statement or opinion.

**Answer:**

I have received over one hundred statements from West Springfield Home Depot employees regarding my work and performance at Home Depot. These statements were received in and around 2003. Plaintiff will promptly provide a list of the individuals who provided written statements.

**Interrogatory No. 5:**

Identify all medical practitioners, including, but not limited to, physicians, psychologists, therapists, counselors, and other health care providers from whom you have received consultation, treatment, and/or examination for any physical, mental, or emotional illness, injury,

or condition from August 9, 2005 to the present; list the address of each and their specialty area of practice; and describe briefly the reason for the service(s) and the date(s) on which the service was provided.

**Answer**:

Other than for medical treatments for a knee condition, I have not treated with any doctors, or other health care providers for medical, mental or emotional issues. Please note that the knee condition is not related to this discrimination claim.

**Interrogatory No. 6:**

Identify all witnesses you believe may have witnessed, or actually did witness, any alleged discrimination or retaliation or whom were otherwise made aware of the alleged discrimination or retaliation; and identify all documents which support, tend to support, or tend to refute your response to this Interrogatory.

**Answer:**

The discrimination involves Home Depot's refusal to promote me and at the same time promote junior, less experienced individuals ahead of me. While several of my co-workers may be aware of junior associates promoted ahead of me, I am not aware that any of my co-workers identified these episodes as discriminatory against me. As such I am not sure that I have any witnesses of actual discriminatory conduct.

**Interrogatory No. 7:**

Describe all sources of any income that you have received from August 9, 2005 through the present, including all income you have received from Home Depot, specifying the amounts received, dates of receipt, and the sources of such income.

**Answer:**

Home Depot has my W-2's for calendar years 2005 and 2006. Likewise it has available to it my earnings for calendar year 2007. In addition to Home Depot, my outside income for calendar year 2005, 2006 and to date in 2007 is as follows:

In 2005 $52,590 – total earnings from all my jobs;
In 2006 $55,006 – total earnings from all my jobs;

**Interrogatory No. 8:**

3

Identify all employers with whom you were employed from the three (3) years preceding your initial date of hire with Home Depot to the present, including in your response the name, address, and telephone number of the employer; the name and title of your direct supervisor(s); the nature of the employment, including your job title; the dates of employment, salary and benefits, and your reason for leaving the employer.

**Answer:**

1.  Scotty's Lumber 1981 through 1983 – I left this job to work for Home Depot in Florida;

2.  Home Depot 1983 to present;

3.  FedEx – in 2001 – temporary position loading trucks in Windsor Locks, Connecticut – it was a seasonal position;

4.  Universal Plastics – in 2003 – temporary position as a warehousemen in Holyoke, Massachusetts;

5.  Sulco – 2004 to present – a warehousemen in Holyoke, Massachusetts;

**Interrogatory No. 9:**

Aside from your attorney(s), state the full names, addresses, and telephone numbers of all persons who assisted in the preparation of, or who prepared, your responses to these Interrogatories, and for each individual, please state their role in preparing the Interrogatory responses and identify all documents used to prepare your responses to these Interrogatories.

**Answer:**

I relied on facts and information known to me to answer these interrogatories.

**Interrogatory No. 10:**

Identify all experts you intend to call to testify at trial, and describe in detail the subject matter of each such expert's anticipated testimony, the facts and opinions to which each expert is expected to testify, and the grounds for each opinion.

**Answer:**

At the present time I do not have an expert witness for trial. Plaintiff will supplement this answer if necessary.

**Interrogatory No. 11:**

Identify or produce for inspection each document in your custody or control, or of which you have knowledge that you contend supports you claim or claims, or relate to any allegation or cause of action asserted in the complaint.

**Answer:**

The plaintiff will supplement this response.

**Interrogatory No. 12:**

State whether Plaintiff has ever filed an EEOC or Massachusetts Commission Against Discrimination charge or ever been a party to a lawsuit other than this action. If so, for each charge or lawsuit state: (a) name and location of the agency or court; (b) charge or court file number; (c) date commenced; (d) whether Plaintiff was the Plaintiff or Defendant in the prior action; (e) names and addresses of all other parties and their attorneys, including a designation whether the party was a Plaintiff, Defendant, etcetera; (f) nature of the charge, complaint and defense; (g) present status of the charge or suit; and (h) if concluded, the final result of the charge or suit and the amount of any settlement or award.

**Answer:**

I filed an action in Florida against Home Depot. That suit settled in 1898 and Home Depot as a defendant has access to all the relevant papers.

In addition, prior to the institution of this action, I filed an action against the Home Depot with the MCAD. That action was removed from the MCAD due to the approaching statute of limitations.

Other than these claims, I have not filed any legal action.

**Interrogatory No. 13:**

If you have ever complained of employment discrimination to an employer, excluding Home Depot, either formally or informally, state the date and describe in detail the nature and resolution of each such complaint.

**Answer:**

Not Appliable.

**Interrogatory No. 14:**

Describe specifically and in detail all steps you have taken in an effort to mitigate the damages or any of the damages which you claim to have suffered as a result of any act or omission by or on behalf of the Defendant Home Depot.

### Answer:

I have continued to work diligently and cooperatively with my supervisors and co-workers at Home Depot. I have taken and completed various Home Depot management training courses and I have been generally available for promotion. In addition, I have had a second job these past five (5) years in order to supplement my income.

### Interrogatory No. 15:

Provide the name and address of each person, if any, from whom you have received any type of treatment (including counseling) for any physical, emotional, mental or psychological condition or problem in the past ten (10) years.

### Answer:

I have had ongoing treatment for a knee replacement. I do not have a primary care physician and I have not treated with any provider for any emotional, mental or psychological condition.

### Interrogatory No. 16:

Detail all efforts you made to seek a promotion at Home Depot from August 9, 2005 to the present.

### Answer:

I am registered with the JPP. I work as a dedicated Home Depot employee. I have been employed with Home Depot for twenty-four (24) years, and I have held seven (7) Home Depot Department Head Supervisor positions. In March 2006 I was asked by Mike Latteral, Assistant Manager Night Operations, if I was interested in an open department supervisor position. I told Mr. Latteral that I was and I was registered for that position in the JPP. Subsequently I was interviewed for and selected for the Department Supervisor Night Crew position that I continue to hold to the present.

### Interrogatory No. 17:

Detail every time you have registered with the Job Preference Process ("JPP"), including for each: the date of the registration and the position for which you registered from August 9, 2005 to the present.

**Answer:**

Home Depot has this information on record with the JPP. My understanding is that with respect to promotions beyond the Departmental Supervisor position that the JPP system is not utilized. My understanding that openings in the assistant manager and manager positions are not posted, and that the selection process is run by the manager and district supervisor. I remain interested in an assistant manger spot.

**Interrogatory No. 18:**

Detail every opportunity you have been given, whether by informal invitation or by formal interview, to interview for a position from August 9, 2005 to the present, including for each: the date of the opportunity or interview, the person with whom you discussed the opportunity or had the interview, and the position involved.

**Answer:**

As noted above, in March 2006 I was offered and accepted the position as Department Supervisor Night Crew.

**Interrogatory No. 19:**

Identify each and every document utilized, relied upon, or referred to in formulating your answers to these Interrogatories.

**Answer:**

1.    My Home Depot Personnel File;
2.    Letters of Recommendation from West Springfield Home Depot employees;
3.    Records from my Florida Case against Home Depot.

Signed under the pains and penalties of perjury on this the *1st* day of August, 2007.

_____    8/1/07
Lionel Fleming

**As to Objections:**

**The Plaintiff,**
**Lionel Fleming**

By: _____

Timothy J. Ryan, BBO#551680
Ryan & Downey, P.C.
1441 Main Street, Suite 1040
Springfield, MA 011030-1450
T: (413) 214-6080
F: (413) 214-6085

8

# Exhibit 3

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-3-213-MAP

LIONEL M. FLEMING

VS.

HOME DEPOT U.S.A.

DEPOSITION OF: CHRISTOPHER D. CATALANA,
taken before Kathleen M. Houghton,
Shorthand Reporter, Notary Public pursuant
to the Federal Rules of Civil Procedure,
at the offices of Ryan & Downey, P.C.
1441 Main Street, Springfield,
Massachusetts on September 14, 2007.

APPEARANCES:

(Please see Page 2.)

Kathleen M. Houghton
Shorthand Reporter

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

2

1    <u>APPEARANCES</u>:

2    RYAN & DOWNEY, P.C.
          1441 Main Street
3         Springfield, Massachusetts   01103,
          representing the Plaintiff.
4    BY:   TIMOTHY RYAN, ESQUIRE

5

6    MORGAN BROWN & JOY, LLP
          200 State Street
7         Boston, Massachusetts   02109-2605,
          representing the Defendant.
8    BY:   TRACY THOMAS BOLAND, ESQUIRE

9

10   In Attendance:
          LIONEL M. FLEMING

11

12

13

14

15

16

17

18

19

20

21

22

23

959 MAIN STREET                                                (413) 733-4078
4TH FLOOR          PHILBIN & ASSOCIATES, INC.        Pittsfield: (413) 499-2231
SPRINGFIELD, MA 01103                                        FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

3

1                          I N D E X
       - - - - - - - - - - - - - - - - - - - - - - - -
2     WITNESSES:                  DIRECT        CROSS
       - - - - - - - - - - - - - - - - - - - - - - - -
3     CHRISTOPHER D. CATALANA         5

4

5

6

7

8

9

10

11
       - - - - - - - - - - - - - - - - - - - - - - - -
12    EXHIBITS:          DESCRIPTION           PAGE
       - - - - - - - - - - - - - - - - - - - - - - - -
13

14

15

16

17

18

19

20

21

22

23

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

9

1     department supervisor for approximately

2     two?

3          A.    Right, four years in Berlin so

4     that takes us to --

5          Q.    '96 time frame?

6          A.    '96, '95, '96.  In Manchester for

7     three years, approximately three years.

8          Q.    Mm-hmm.

9          A.    And then what happened is the --

10    there was an opening in the West

11    Springfield store and at that time my son

12    was still living with his mom.  It was

13    closer to home so the store manager, Russ

14    Founds, asked if I wanted to come to West

15    Springfield because Manchester was still

16    pretty far if I ever had to pick up my son

17    so I said okay.

18         Q.    So you started at the West

19    Springfield store when?

20         A.    Approximately 1998, '99, right

21    around there.

22         Q.    '98, '99?

23         A.    '99, right.

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

10

1      Q.    As an assistant?

2      A.    As an assistant, right, a lateral

3   move from Manchester.

4      Q.    And the store manager was Russ

5   Founds?

6      A.    Correct.

7      Q.    And you remained in an assistant

8   position for how long?

9      A.    For -- till the end of pretty much

10   2001.

11      Q.    And you became store manager in

12   2001?

13      A.    I actually at the end of the 2001

14   got promoted to co-manager.

15      Q.    Okay.  Which is unique within

16   the --

17      A.    Back then -- It's unique now.  It

18   was not then.  But what happened, the

19   co-manager position is kind of like a

20   training position that Home Depot used to

21   offer and because for higher volume stores

22   and then with Russ we were in a transition

23   where Russ was leaving and he was going to

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

15

1    Depot?

2        A.    I had no knowledge of it until

3    recently to be honest with you.  I did not

4    know so.

5        Q.    Okay.  And did you learn of the

6    prior suit from anyone other than counsel

7    to the company?

8            MS. BOLAND:  Let's be clear

9    about which suit you're talking about,

10   just so the record's clear.

11           MR. RYAN:   The Florida suit.

12           THE WITNESS:  Actually, no, I

13   heard it from -- I believe it was from a

14   regional HR, which I don't remember if it

15   was -- I don't remember who it was.  I do

16   not believe it was from our attorneys

17   though.

18       Q.    (By Mr. Ryan)  And do you recall

19   in what context you learned of the prior

20   suit, the Florida litigation?

21       A.    I do not, I don't know.

22       Q.    The Massachusetts litigation was

23   started in part due to four promotions

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

16

1    that occurred in October 2001?

2        A.    October, November time frame,

3    2001, mm-hmm.

4        Q.    Were you at the West Springfield

5    store at that time?

6        A.    Yes.

7        Q.    And your role there was?

8        A.    Assistant store manager.

9        Q.    Assistant store manager.  And what

10   role did, if any, did you play in the

11   promotions?  There were four open

12   departments?

13       A.    I -- as best as I can recall I did

14   a couple of interviews for that.

15       Q.    Okay.  And the decision-maker in

16   connection with those promotions was who?

17       A.    Penny Allen.

18       Q.    And to the extent that you did

19   interviews, what -- you then reported back

20   to Penny Allen?

21       A.    Correct.

22       Q.    And what criteria or what

23   recommendation were you bringing back to

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

1     her with respect to the interviews you

2     did?

3         A.    Just that he had -- anybody I had

4     interviewed, whether they had passed or

5     failed.   It's that -- it's a pass or fail

6     interview.

7         Q.    And what's the structure of the

8     interview?

9         A.    Basically it's approximately, if I

10    remember right, about 10 questions and the

11    questions are kind of scenarios how you

12    would react in a situation, whether it be

13    management conflict situation with an

14    employee, it could be a customer issue,

15    and the reactions from the person getting

16    the interview, how they would react.

17        Q.    So these are essentially scripts?

18        A.    Correct, correct.

19        Q.    And would they be, if you will,

20    departmental focused, there might be a

21    different script for electric light as

22    opposed to lumber?

23        A.    No.   The actual scripts for --

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

**PHILBIN & ASSOCIATES, INC.**

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

18

1   would be different.  Merchandizing would

2   all be the same.  Operations would be a

3   little bit different so.

4      Q.   Okay.  And do you recall

5   interviewing Mr. Fleming in connection

6   with that?

7      A.   I remember that I interviewed

8   him.  I don't remember any questions.

9      Q.   And do you recall his performance?

10      A.   He passed.

11      Q.   Okay.

12      A.   He did pass.

13      Q.   All right.  And do you recall who

14   else you interviewed for?

15      A.   I do not recall.  I do remember

16   interviewing Lionel and that he passed.  I

17   do not -- I couldn't say for sure I

18   remember anyone I interviewed.

19      Q.   Now, in the interview would you

20   have essentially a script in front of you

21   when you're interviewing the candidate?

22      A.   Correct.

23      Q.   And are there any notes of that

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

19

1    interview that are then handed in and kept

2    within the company?

3        A.    I believe there -- we do make some

4    notes.   I don't know where they go after

5    they're interviewed.

6        Q.    And in making the promotions that

7    were made in 2001 --

8        A.    Mm-hmm.

9        Q.    -- the decision was made by?

10       A.    Penny Allen.

11       Q.    And did you make a recommendation

12   to the best of your recollection?

13       A.    I do not recall.

14       Q.    And did she ever explain to you

15   her reasoning as to why she made the four

16   promotions she made?

17       A.    I don't recall that.

18       Q.    Home Depot has had, and it's in

19   the Answers To Interrogatories as well,

20   since approximately 1999 --

21       A.    Mm-hmm.

22       Q.    -- the JPP?

23       A.    Correct.

959 MAIN STREET        PHILBIN & ASSOCIATES, INC.        (413) 733-4078
4TH FLOOR                                                Pittsfield: (413) 499-2231
SPRINGFIELD, MA 01103                                    FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

28

1      Q.   And how many department

2   supervisors in the '01, '02 time frame?

3      A.   Twenty -- approximately 25.

4      Q.   Twenty-five.  And currently

5   approximately how many?

6      A.   Seventeen approximately.

7      Q.   All right.  Now, there's in the --

8   there is in the Answers To

9   Interrogatories, Mr. Catalana, and I'm

10   just trying to focus you and then ask you

11   if you know anything about it.  And this

12   goes back to the November, October '01

13   promotions and these answers were put to

14   -- or they were signed by Mr. Rousseau I

15   believe -- No.

16         Ken Thompson, it indicates on Page

17   21 in response to Interrogatory 26 that he

18   was an assistant manager at the store?

19      A.   Correct.

20      Q.   And was familiar with the

21   interview process in October '01.  Is he

22   still with the company?

23      A.   He is not.

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

29

1      Q.   He is not.   And in response to the

2    earlier interrogatories at the MCAD, and

3    again I'm just asking if you have any

4    knowledge.   Let me focus it.   In response

5    to Interrogatory Number 5, the question

6    asks:   Please describe in full and

7    complete detail why the complainant was

8    not promoted to either the open department

9    positions -- and this refers to the

10    October '01.

11          And it refers in the second or

12    third paragraph, it states:   In or about

13    late October or early November, shortly

14    before the final decision regarding --

15    before the decision was made, Mr. Fleming

16    had a discussion with Ken Thompson

17    regarding his interest in potential

18    promotions to the hardware department

19    supervisor and then goes on to indicate

20    that Mr. Thompson reports that Mr. Fleming

21    showed a lack of enthusiasm.

22          Do you have any knowledge about

23    that happening back in that time frame?

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

30

1    A.    I didn't -- I did not hear --

2    Q.    Mm-hmm.

3    A.    -- Lionel and Ken Thompson talking

4    about it so.

5    Q.    Was there a report that you were

6    aware of made to you back in that time

7    frame?

8    A.    About the conversation?

9    Q.    Yes.

10   A.    In a staff meeting it was

11   mentioned to Penny Allen so.

12   Q.    Okay.  And was this the staff

13   meeting to discuss the promotions?

14   A.    It was actually one of our general

15   weekly staff meetings so.

16   Q.    And your recollection of the

17   comment made my Mr. Thompson was what?

18   A.    That pretty much exactly what you

19   said, that he really wasn't interested in

20   moving forward position.

21   Q.    And your recollection of

22   Ms. Allen's response, if any, was what?

23   A.    I don't recall.  I don't really

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

31

1    remember what she said.

2        Q.    Okay.  And to your understanding

3    the promotions had not yet been made?

4        A.    Correct.

5        Q.    Was there any discussion about

6    going back and checking with Lionel as to

7    whether --

8        A.    I do not recall.

9        Q.    All right.  But in your discussion

10   with him you thought he had passed or your

11   interview with him you thought he had

12   passed the interview?

13       A.    Correct, correct.

14       Q.    And did you detect any lack of

15   enthusiasm for that position?

16       A.    I did not that I recall.

17       Q.    And you do not recall making a

18   report to Ms. Allen that he had a lack of

19   enthusiasm?

20       A.    I do not recall.

21       Q.    Now, just off the record for a

22   second.

23                    (Discussion off the record.)

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

32

1       Q.    (By Mr. Ryan)  Did you have any

2    discussions with Mr. Fleming after the '01

3    promotions were made and he was not

4    promoted?

5               MS. BOLAND:   Objection.

6               THE WITNESS:   About his

7    promotion?

8       Q.    (By Mr. Ryan)  Well, lack of

9    promotion?

10      A.    No.  I had many discussions with

11   him about store business.

12      Q.    All right.  And at any time did he

13   address to you concerns that he hadn't

14   been promoted?

15      A.    Not that I recall.  We talked a

16   lot because he was one of my employees but

17   I don't recall any conversations with him

18   so.

19      Q.    And in your -- you've now been the

20   store manager in West Springfield about

21   five years?

22      A.    Mm-hmm, approximately.

23      Q.    And would you agree that

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

33

1    Mr. Fleming's hard-working?

2        A.    Yes.

3        Q.    Reliable?

4        A.    Yes.

5        Q.    Conscientious?

6        A.    Yes.

7        Q.    Knowledgeable about his duties?

8        A.    Yes.

9        Q.    Okay.  A year or so ago his

10   supervisor was Mike Latourelle?

11       A.    Correct.

12       Q.    And Mr. Latourelle's view of

13   Mr. Fleming's performance, positive,

14   negative?

15       A.    Overall I would say positive.

16       Q.    And in connection with

17   Mr. Latourelle, did he discuss with you

18   recommending Mr. Fleming for a promotion?

19       A.    I don't recall if he discussed it

20   with me.  I know he wanted to see him get

21   promoted.

22            MS. BOLAND:  Can we take a

23   break when it's good for you?

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947

# Exhibit 4



# ASSOCIATE PERFORMANCE NOTICE

**A** Write associate's name, location, and department legibly.

| Last Name | Fleming | First Name | Lionel | Middle Initial | M | Location # | 2662 | Dept # | 93 |

**B** Indicate type of notice and appropriate reason—see back for more specific information.

Type of Notice:  ☐ Verbal   ☒ Written

Reason: ☒ Good Job Performance Recognition
☐ Violation of Company Policies or Procedures
☐ Poor Job Performance
☐ Other (describe briefly) _____

**C** Write complete details of notice (who, what, when, where, why, and how). See back for specific information.

9-11-01 This notice is to Recognize Lionel for his teamwork in helping the store Roll out its Item Pricing Program, helping maintain the program through Audits and working on the stores Pricing hit teams to correct any mistakes, He has shown himself to be a valuable member of the team and has done whatever is needed to insure the programs success.

**D** Write the Gameplan/Action to be Taken. Include a date to follow-up on the associate's progress.

**E** Check associate file, then list any previous notices; indicate the type, date, and reason for previous notice(s).

| ☐ Verbal | ☐ Written | Date: _____ | Reason: _____ |
| ☐ Verbal | ☐ Written | Date: _____ | Reason: _____ |
| ☐ Verbal | ☐ Written | Date: _____ | Reason: _____ |

**F** Allow associate to write their comments below.

**G** Obtain appropriate signatures. See back for additional information.

Associate signature acknowledges only that this notice has been read and discussed. It does not mean that the associate agrees with the contents of this notice.

| Print Associate Name | Lionel M. Fleming | Print Supervisor Name | Sean Sullivan |
| Associate Signature X | Lionel M. Fleming  Date | Supervisor Signature X |  Date 9/11 |

HDC-010 (7/95)          **DISTRIBUTION: White**—Associate File    **Yellow**—Give to Associate

# ASSOCIATE PERFORMANCE NOTICE

**A** Write associate's name, location, and department legibly.

Last Name: FLEMING   First Name: LIONEL   Middle Initial: M   Location #: 2607   Dept #: 93

**B** Indicate type of notice and appropriate reason—see back for more specific information.

Type of Notice: ☐ Verbal   ☒ Written

Reason: ☒ Good Job Performance Recognition
☐ Violation of Company Policies or Procedures
☐ Poor Job Performance
☐ Other (describe briefly)

**C** Write complete details of notice (who, what, when, where, why, and how). See back for specific information.

WITH LIONEL'S HARDWORK AND WILLINGNESS TO DRIVE THE NEW SPI 2000 PROCEDURES, THE STORE'S RECEIVING DEPT WAS GRADED A 100% COMPLIANCE RATE ON AN OPERATIONAL AUDIT ON 11/30/2001.

THANKS FOR STICKING WITH US!

Ian

**D** Write the Gameplan/Action to be Taken. Include a date to follow-up on the associate's progress.

MERIT BADGE GIVEN

**E** Check associate file, then list any previous notices; indicate the type, date, and reason for previous notice(s).

☐ Verbal ☐ Written Date: _____ Reason: _____
☐ Verbal ☐ Written Date: _____ Reason: _____
☐ Verbal ☐ Written Date: _____ Reason: _____

**F** Allow associate to write their comments below.

**G** Obtain appropriate signatures. See back for additional information.

Associate signature acknowledges only that this notice has been read and discussed. It does not mean that the associate agrees with the contents of this notice.

Print Associate Name: _____   Print Supervisor's Name: Ian Phelps
Associate Signature X _____ Date 10/4/01   Supervisor Signature X _____ Date Nov '01

HDC-010 (7/95)     DISTRIBUTION: White—Associate File   Yellow—Give to Associate

# ASSOCIATE ACTION NOTICE

**The Home Depot**

☐ SALARIED   ☒ HOURLY

### COMPLETE SECTION 'A' FOR ALL CHANGES

**A** | Last Name: FLEMING | First: LIONEL | Middle Initial: M. | Store #: 2662 | Dept. #: 93 | Social Security #: 263 37 5723

## CHANGE IN ASSOCIATE STATUS

**B** PERSONAL CHANGE

| Last Name | First | Middle Initial | Home Phone | | Effective Date of Change |
|---|---|---|---|---|---|
| Mailing Address | | City | | State | Zip |

☐ Single (S)   ☐ Married (M)   ☐ Divorced (D)   ☐ Legally Separated (L)   ☐ Other (O)   ☐ Changing Tax Status (Attach New Federal and State Tax Forms)

**C** REVIEW/RATE CHANGE

☐ Introductory Review (IR)   ☐ Merit Review (MR)*
☐ Regular Review (RR)   ☐ Promotion/Demotion*
☐ Non-Monetary Regular Review with Merit (RM)*   ☐ Follow-up Review (FR)
☐ Base Rate Adjustment (AJ)*
* District Manager Approval Required in These Categories.

| Review Rating | Current Rate ☐ SAL. ☐ HR. | % of Increase | Date Review Given* | Effective Date of Rate Change |
|---|---|---|---|---|
| | New Rate ☐ SAL. ☐ HR. | | | |

*Must be same as Associate Signature Date, Section 'K'
**Effective Date must be the quarterly review date for RR and RM review categories.

**D** EMPLOYMENT STATUS CHANGE (EC)

Change To:
☐ Full Time (FT) Hourly   ☐ Full Time (FS) Salaried   ☐ Part Time (PT)   ☐ Temporary (TP)   ☐ Rehire

☐ With Break-in-Service (RH or SH)
☐ Without Break-in-Service (RI)
**(Re-instatement) see SOP 01-03

Effective Date of Change: _____ Explanation of Rehire without Break-in-Service:

**E** JOB CHANGE

☐ Promotion (must pass drug test) (PM)
☐ Demotion (DM)
☐ Department/Title Change (DC)
☐ ASM Dept. Assignment (AR)

| Drug Test Requisition # | FROM: Dept. | Job Title Code | TO: Dept. | Job Title Code | Effective Date of Change |
|---|---|---|---|---|---|
| | Job Title | | Job Title | | |

**F** STORE TRANSFER (ST)

REQUESTED BY:
☐ Company (C)
☐ Associate (E)

| FROM: Store | Dept | Departure Date | TO: Store | Dept. | Report Date | Effective Date of Change |
|---|---|---|---|---|---|---|
| Job Title | | | Job Title | | | |

**G** TERMINATION (TE)

| Last Day Worked | Vacation Hours Due | Hire Date | | Effective Date of Termination |
|---|---|---|---|---|
| Termination Code (see back) | Reason for Termination | | | |

## ASSOCIATE REQUEST

**H** VACATION (Hourly associates complete a Time & Attendance Change Request form #HDC-150; all others complete this section.)

| Beginning Date | Ending Date | Number of Working Hours |
|---|---|---|

**I** SPECIAL PAYMENT

| TRAVEL PAY | Travel Date(s) | Number of Hours/Days | From Location | To Location |
|---|---|---|---|---|
| JURY DUTY | Beginning Date | Ending Date | Number of Hours/Days | |

OTHER (reason): _____ Amount: _____

**J** ADDITIONAL INFORMATION/EXPLANATION

* 5 MERiT Badges Congratulations *

**K**

| Manager's Signature | Date | Supervisor's Signature | Date |
|---|---|---|---|
| Associate's Signature: Lionel M. Fleming | Date: 10/8/01 | Payroll Dept. | Date |
| Human Resources Dept. | Date | District Mgr.'s Signature | Date |
| | | RVP/HRVP Signature | Date |

**HR/P Approval Required.

HDC-075 (701)

# RECEIVING ASSOCIATE
# PERFORMANCE APPRAISAL

**SPI-2000**

## THE PURPOSE OF THIS APPRAISAL IS TO:

1. **Inform:** Talk openly and honestly about performance.
2. **Evaluate:** Evaluate Associate on important job performance areas.
3. **Develop:** Identify developmental actions that can be taken to enhance performance.

| Associate's Name: LIONEL FLEMING | Supervisor JIM LESSARD | Store # 2607 |
|---|---|---|
| SSN: 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 | Date of Last Review: 06/19/01 | Time in Position: 1-1/2 YEARS |
| Type of Review: ☐ Mid-Year  ☒ Annual  ☐ Merit | Date of Hire: 10/13/83    Date Written: 11/28/01 | Date Given: 12/18/01 |

## I) DEVELOPMENT GAMEPLAN

**Instructions:** If this is <u>not</u> the first time this Associate has been reviewed using this form, he/she should have created a Development Plan during their last review. If so, please indicate the Associate's progress on their Development Plan.

| | Please Circle | |
|---|---|---|
| This Associate has worked on their Development Plan. | **Yes** | No |
| | Please Circle | |
| This Associate showed improvement on the topics included in their Development Plan. | Yes | No |

| | Please Circle One | | | | |
|---|---|---|---|---|---|
| Overall, rate the Associate's performance in the completion of their Development Plan | None of the Plan completed.  **1** | About 25% of the Plan completed.  **2** | About 50% of the Plan completed.  **3** | About 75% of the Plan completed.  **4** | 100% of the Plan completed.  **5** |

**Associate's comments and results:** In order to provide context to these results, use this space to describe any factors that may have affected your performance - describe barriers you faced, unusual circumstances and accomplishments you achieved despite the obstacles.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____